Argued May 25, affirmed June 28, reconsideration denied July 21, petition for review denied September 1, 1976

FARLEY, *Respondent,*

*v.*

WILLAMETTE WESTERN CORP., *Appellant.*

(No. 420-592, CA 5710)

551 P2d 115

*Charles R. Holloway, III,* Portland, argued the cause for appellant. With him on the briefs were Tooze, Kerr, Peterson, Marshall & Shenker, Portland.

*Larry Dawson,* Portland, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Langtry and Lee, Judges.

LEE, J.

**LEE, J.**

In this workmen's compensation case, the referee awarded claimant permanent partial disability for scheduled injuries totaling 318 degrees (120 each for loss of the left and right legs, 58 for loss of the right arm, and 20 for loss of binaural hearing). The Board affirmed. The circuit court increased the award to permanent total disability and the employer appeals.

At the time of the injury, September 12, 1969, claimant, age 43, was a foreman pile driver. His body sustained an uncontrolled fall while clinging to sheets of iron.[1]

In a report on January 28, 1971, Dr. H. Freeman Fitch of the Orthopedic and Fracture Clinic in Portland stated that claimant had a "severe disability in both lower extremities" and a "loss of function in his right upper extremity." Claimant had been under Dr. Fitch's care since 1969.

On April 1, 1971, Dr. Richard P. Panian found that "An audiogram shows a hearing loss down to 50-60 decibels."

Dr. Theodore J. Pasquesi, an orthopedic surgeon, examined claimant on May 14, 1971 and reported that the claimant "has suffered very severe injuries to both lower extremities and to his right forearm. He has also subsequently developed a post-traumatic urethritis or stricture as the result of the treatment that had to be

---

[1]Claimant vividly described the incident in the following terms:

"When it hit the ground, just before I got to the ground, I could feel my body coming away from the sheet. The wind was pulling me away so it slammed me into it and broke both of my legs. One kneecap flew right out. They took the other one out. I felt my arm snap out. Broke my right arm; whipped me back in the air. Come down in an uncontrolled fall. Come into my face. Hit my legs and arm again. When I came in the face, it drove my nose inside my head and then through the roof of my mouth. Of course, it compounded and ground up all that other stuff. Took my wind out. If it knocked me out, I wouldn't be here now. But I never was unconscious. So I shoved my thumb in my mouth to shove my nose up in my mouth so I could breathe. I remember the first night—

"Q (by Mr. Dawson) All right, you can skip that. * * *"

used." Dr. Pasquesi also concluded that claimant had a 40 percent loss of function of a hand and a 50 percent loss of function in each leg. He further opined that

"* * * *if* this patient had a type of work where he could work in a sedentary occupation which did not require his being on his feet more than 2 hours during a day that he *probably* could handle it *if* he could be trained for such a position. * * *" (Emphasis supplied.)

In a letter of June 15, 1971, Susan Mather, a clinical audiologist (M.S.), wrote that claimant had a mild loss of hearing but noted that she had not examined him before the accident and so could not make a comparison.

Dr. Lewis A. Van Osdel, Medical Examiner for the Workmen's Compensation Board's Physical Rehabilitation Center, recommended, in an extensive medical report dated September 2, 1971, that claimant

"* * * be referred to the Division of Vocational Rehabilitation for a job not requiring walking or prolonged standing or sitting."

On September 17, 1971, Lester V. Norman, a rehabilitation counselor, found that claimant

"* * * is of the opinion that it is not his intention to return to work. He stressed the fact that he is a patient at the Physical Rehabilitation Center only because his insurance company requested that he comply."

Reporting after a follow-up examination, Dr. Van Osdel found, on September 17, 1971, that:

"This patient initially impressed me as one who would resist the Physical Rehabilitation Center evaluation by his statement, 'I am here because I was ordered here. I don't need rehabilitation because I am disabled and have insurance and compensation benefits.'

"The patient has been very sporadic in keeping appointments with the Psychology Center, Occupational Therapy and Physical Therapy. Yesterday, at joint staff conference, it was recommended that, because of his poor attendance and attitude, he be disenrolled. * * *

"* * * * *

"* * * It is interesting to note that this man has been

bragging in Physical Therapy and Occupational Therapy that he has $850.00 a month income from two insurance policies plus Social Security and disability benefits * * *. Because of his residual limitation of motion of his knees and his left ankle, I am reasonably sure that he cannot return to heavy construction; however, he could return to some sort of remunerative work if he so desired."

On September 21, 1971, Dr. Van Osdel reported again that:

"* * * The Permanent Partial Disability as regards the multiple injuries of both legs, right wrist, and right ulnar nerve is as follows:

"(a) Legs (both knees and left ankle), moderately severe;

"(b) Right wrist, minimal;

"(c) Ulnar nerve, right, minimal.

"Under the whole body concept, the aggregate disability of Mr. Farley is deemed to be in the range of moderately severe."

In its report of October 27, 1971, the Discharge Committee of the Physical Rehabilitation Center of the Workmen's Compensation Board made the following conclusions:

"*PHYSICAL CLASSIFICATION:* Moderately severe physical disability was demonstrable at the time of discharge from the Center. The industrial accident is responsible for a minimal loss of function of a right wrist, a moderate loss of function of a right leg, and a moderately severe loss of function of a left leg.

"* * * * *

"*PSYCHOLOGICAL CLASSIFICATION:* Moderately severe psychopathology on the basis of the above evaluation. The industrial accident is responsible for a moderately severe degree of the total psychopathology present, and it may well be that some of the psychopathology will be permanent."

Dr. Norman Hickman, a clinical psychologist (PhD), reported that, based on the evaluation between September 7 and September 17, 1971, he made the following psychological

"*PROGNOSIS:* In the light of the total man picture, the

prognosis for successful restoration of this patient to some type of gainful employment seems very poor. He does possess the resources to be rehabilitated, but psychological factors will make this relatively impossible."

Dr. Hickman also noted that

"* * * [t]he patient openly states that he sees no reason why he should train for a job where he could earn $450 per month or so when he received much more at the present time. * * *"

Dr. Richard H. Phillips, associated with Drs. Dixon, Dickel and Hutchens in the Portland Psychiatric Clinic, examined claimant on December 10, 1971. Dr. Phillips found that the claimant was

"* * * preoccupied with what he considers a conserted [sic] effort to force him into a position in which he will forfeit compensation by accepting employment which would pay less than he could make in his original job classification, or than he now receives as accident benefit. * * *"

Following the examination on October 31, 1973, Dr. Michael S. Baskin of the Oregon Orthopedic Clinic stated in a report that

"* * * I feel this patient would be capable of doing some type of sedentary work or work that did not require any type of heavy lifting or walking on uneven ground."

The last medical report in the record is from Dr. Phillips, on October 8, 1974. Dr. Phillips stated that he had seen claimant

"* * * for follow up evaluation as I have done on several occasions in the past. * * *"

and that

"[b]arring his return to his old employment, he has little chance of being re-trained for anything which would pay an amount equivalent to his current compensation. * * *"

Finally, Dr. Phillips stated,

"It is my belief that this man remains unemployable * * *."

[ 908 ]

Claimant testified that he cleaned up one of his three rental houses for a week and that the work included scrubbing the floor. Claimant also stated that he mows and rakes his own yard and can saw and write.

Claimant has a tenth-grade education and had some experience as a diesel mechanic when he was in the military service, which he left in 1945.

Our de novo review of the evidence leads us to the same conclusion as the referee and the Board. The medical evidence, overall, is that claimant's physical impairment is in the moderate to severe range. Both Dr. Van Osdel and Dr. Baskin indicated that claimant could do work that was not physically demanding. Claimant himself has admitted he can saw, write, rake a yard, and scrub floors. Also, claimant has resisted a return to the work force; Dr. Van Osdel and Dr. Hickman both reported on claimant's preference for disability compensation over employment.

We conclude that claimant's ability to do limited work precludes an award of permanent total disability.

Reversed.